UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DANIAL CORBIN, | ) |
|     Plaintiff, | ) Case No.: ) |
| v. | ) ) Hon. |
| MARY ELLEN JENSEN, | ) ) Magistrate Hon. |
|     Defendant. | ) |

## COMPLAINT

NOW COMES the PLAINTIFF DANIAL CORBIN, a citizen of the State of Illinois, and ("Plaintiff"), by and through his attorneys, Mudd Law Offices, and complains of the DEFENDANT MARY ELLEN JENSEN ("Defendant"), and states as follows:

### NATURE OF ACTION

1. This is an action for breach of fiduciary duty, actual fraud, constructive fraud, and breach of contract, arising from the Defendant's actions directed toward the Plaintiff.

2. By this action, the Plaintiff seeks compensatory damages, punitive damages, and all other relief to which he may be entitled as a matter of law.

### PARTIES

3. Danial Corbin ("Plaintiff") is a natural person, a citizen of the State of Illinois, and a resident of Cook County.

4. Mary Ellen Jensen ("Defendant") is a natural person, a citizen of the State of Indiana, and a resident of Lake County, and can be served at her residence located at 1543 Tulip Lane, Munster, Indiana, 46321 or wherever she may be found.

**JURISDICTION AND VENUE**

5. Given the fact the Defendant is a citizen of and domiciled in the State of Indiana, on the one hand, and that the Plaintiff is a citizen of and domiciled in the State of Illinois, on the other, there exists a diversity of citizenship between the Parties.

6. Pursuant to the terms of contracts, investments, and payments described more fully below, the Plaintiff demands damages in excess of $75,000.00, establishing, an actual controversy that exceeds $75,000.00.

7. Therefore, based on the foregoing, this Court has subject matter jurisdiction over the claim asserted herein pursuant to 28 U.S.C. § 1332.

8. Additionally, given the Defendant's residence and principal place of business is in Munster, Lake County, Indiana, venue is proper in the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. §1391(b). In particular, Lake County, Indiana falls within the boundaries of this District's Hammond Division.

9. Therefore, this Court may exercise jurisdiction over Plaintiff's claim.

10. Further, the Defendant engaged in operations in Indiana that benefited her under the laws of this jurisdiction.

11. Given her residency in Indiana, respectively, the Defendant is subject to general personal jurisdiction within the State of Indiana. As such, this Court may exercise general personal jurisdiction over her.

12. Additionally, the Defendant chose, by contractual agreement, that the law of the State of Indiana governed any dispute between the Parties arising from the contracts at issue. As such, this Court may exercise specific personal jurisdiction over her.

13. Therefore, the Defendant is subject to general and specific personal jurisdiction

within the State of Indiana. As such, this Court may exercise personal jurisdiction over her.

## FACTUAL BACKGROUND

*The Parties*

14. Danial Corbin is a Union Millwright and independent construction professional residing in Lansing, Illinois.

15. Mary Ellen Jensen is an advertising and marketing professional, residing in Munster, Indiana, who presents herself, as per her LinkedIn profile, as an Independent Consultant since 2011.

16. Further, as per her resume (available as an upload on LinkedIn), Defendant presents herself specifically as a Development Consultant and Content Expert since 2011.

17. Plaintiff and Defendant met through mutual friends.

18. Over the course of 2014 through 2017, Parties became members of the same social circle and became casual friends.

*The Business Relationship*

19. In 2017, Plaintiff informed his friends and social circle that he wished to invest his money.

20. Plaintiff asked his friends and social circle to be alert for potential investment opportunities and to inform him of such opportunities.

21. On or around summer of 2017, Defendant informed Plaintiff that she intended to create a company and was seeking investment.

22. Plaintiff asked Defendant to provide him with an investment proposal.

23. Defendant presented Plaintiff with a "Proposal for Investment" ("Proposal" and attached as Exhibit A) to create Rhino Reps, an intended S Corporation located at Defendant's personal address, 1543 Tulip Lane, Munster, Indiana, 46321.

24. The Proposal stated that Rhino Reps had "the expectation of rapid expansion in the advertising, marketing and publishing industry." See Exhibit A.

25. The Proposal stated that Rhino Reps sought financial backing in order to be able to continue development and introduce its new service." Id.

26. The Proposal stated that "the [c]ompany shall be formed as an S-corporation under Indiana state law and headed by Mary Ellen Jensen." Id.

27. The Proposal stated the company to be formed as "an emerging creative production resource, whose customers will include advertising agencies, corporate marketing departments and publishing houses." Id.

28. The Proposal stated that the company would provide services allowing their customers access to "photography, digital graphics, illustrations and motion clips… for use in advertising, marketing, and publishing communications." See Exhibit A.

29. The Proposal stated that the company was in development of an exclusive in-house library of photography, digital graphics, illustrations, and motion clips that would be made available online so that customers would have immediate licensing capabilities for use. Id.

30. The Proposal stated that "[o]perations will be handled by Mary Ellen Jensen, a 20-year media professional with extensive experience representing creative talent, orchestrating photography and video productions, licensing content and negotiating creative contracts with advertising agencies, fortune (*sic*)500/100 companies and publishing houses throughout the United States." Id.

31. The Proposal requested a total loan of $60,620.00 over the course of five years, five months to aid in supporting the operation expenses, website and database development, creative production costs, marketing expenses, legal fees associated with obtaining content, and for the hiring of a part-time free-lance editor. Id.

32. The Proposal stated that "[l]ong term debt payment is a key feature of the [c]ompany's financial plan" and that it expected to break even within 22 months of the introduction of services. Id.

33. Indeed, the Proposal claimed returns would be annually distributed each December of the years 2020, 2021, and 2022.

34. Defendant then asked Plaintiff to invest in Rhino Reps.

35. Plaintiff stated he would perform further due diligence, but that he was open to investment.

36. Parties negotiated further regarding Plaintiff's potential investment in Rhino Reps.

37. Plaintiff requested and obtained from Defendant a cash flow analysis, market development plan, and business prospectus ("Investment Documents").

38. The Investment Documents provided details about prospective business partnerships, names of employees and consultants affiliated with Rhino Reps, and the overall business strategy for Rhino Reps over the next five to ten years.

39. Upon reviewing the Proposal, Investment Documents, and receiving reassurance from Plaintiff regarding the strategy and her expertise, Plaintiff decided to invest as Defendant's silent partner.

40. In June 2017, Parties signed an agreement wherein Plaintiff provided Defendant with $60,620.00 in exchange for a role as Defendant's silent partner, entitled to a 13% share in the net profits of Rhino Reps.

41. Between June 2017 and August 2018, Defendant provided Plaintiff with sporadic updates on business operations, promising Plaintiff that operations and management were underway, and the company was active.

42. Further, as contact grew more sporadic, Plaintiff had to initiate interactions, as Defendant stopped contacting Plaintiff.

43. By August 2018, all interactions between Parties were the result of Plaintiff's prompting with said interactions occurring verbally via telephone.

44. However, in October 2018, Defendant, finally, approached Plaintiff to inform him regarding the business.

45. Defendant informed Plaintiff that Rhino Reps was in crisis because the business had no money to pay taxes for fiscal year 2017.

46. Defendant informed Plaintiff that there was a pressing need to pay these taxes immediately due to an impending October tax filing deadline.

47. Thus, Plaintiff provided Defendant with $15,000 in additional funds for the preparation and filing of taxes.

48. This secondary investment was memorialized in a "Partnership Agreement" signed between Parties and dated October 15, 2018 (the "October 2018 Agreement").

49. In return for the increased investment, Plaintiff's ownership interest in the company was increased to 16.25%.

50. The October 2018 Agreement also states that Defendant will bear 100% of the costs upon receiving Plaintiff's investment.

51. The October 2018 Agreement further states that Defendant shall be responsible for all business activities of Rhino Reps.

52. Shortly after signing the agreement, Defendant requested that Plaintiff provide $4,000 so that Plaintiff would have the funds to purchase health insurance while working on Rhino Reps.

53. Plaintiff duly provided Defendant with an additional $4,000 in funds.

54. Thus, Plaintiff has provided Defendant with a sum total of $79,000 in investment for the operation and management of Rhino Reps.

*The "Silent" Partner*

55. Since signing the October 2018 agreement, Plaintiff has continued to act as Plaintiff's silent partner.

56. From October 2018 through the fall of 2019, Plaintiff made numerous requests of Defendant for updates regarding the "development of product, website, database, go to market strategy and all business development activities."

57. During that time, Defendant failed to provide Plaintiff with a single update.

58. In October of 2019, the Defendant made a phone call to the Plaintiff who answered and informed him that she was sorry about the progress of the business.

59. Plaintiff asked Defendant about the progress of the critical internet infrastructure including the website.

60. Defendant informed him that the website was inoperable, accessible to only those with a password and was not fit for operational purposes.

7

61.     To reiterate, Defendant was obliged to oversee the "development of product, website, database, go to market strategy and all business development activities," yet, as of October 2019, Rhino Reps had an inoperable website more than two years after the Parties' initial agreement.

62.     Plaintiff requested that Defendant provide him with regular updates on the progress of the business, including any information related to its financial stability.

63.     However, after October 2019, Defendant did not provide Plaintiff with a single update.

64.     In or around June 2021, Plaintiff attempted to contact Defendant via text and phone, but received no answers.

65.     After having not heard a word from the Defendant since October 2019, Plaintiff drove to Defendant's house in an effort to contact her.

66.     Plaintiff was let into the house by Defendant, and they began discussing their partnership.

67.     Defendant failed to provide Plaintiff with any updates regarding Rhino Reps, the Plaintiff's investment, or the "development of product, website, database, go to market strategy and all business development activities."

68.     Defendant, instead, complained to Plaintiff that her life was difficult as she now had a child.

69.     Defendant further complained that her cell phone provider failed to issue a necessary software update which prevented the use of her phone, which is why she was purportedly unable to contact Defendant for over a year.

70.     Defendant apologized to the Plaintiff for her lack of response and continued

8

offering the excuse that her life was difficult due to personal reasons, specifying that she was now a mother.

71. Plaintiff, while in Defendant's house, noticed that, though Plaintiff claimed financial hardship, she was surrounded by numerous boxes of new and unopened baby toys and other shipping deliveries.

72. Plaintiff returned home, dissatisfied but sympathetic with the Defendant's claimed plight.

73. However, Plaintiff learned that Defendant had been posting on Facebook and the posts indicated that she was using the mobile application on her phone.

74. Defendant created these posts during the same period of time that she told Defendant her phone was unusable.

75. Defendant, upon realizing that Plaintiff had lied about her phone's functionality, informed Plaintiff that he would meet with her next week.

76. However, that next week, Plaintiff received no answer when he arrived at Defendant's residence, though he knocked on both the front and back doors.

77. Plaintiff texted Defendant asking her if her no-show was part of a plan to keep her business partner uninformed, specifically asking her "Is this the way it's going to be?"

78. Defendant did not respond to Plaintiff's text.

79. Defendant has never once contacted or spoken to Plaintiff since.

80. At or around Christmas 2021, Plaintiff phoned Defendant, receiving no answer.

81. On May 5, 2022, Plaintiff mailed Defendant a letter requesting an accounting and information on the business.

82. The letter arrived at Defendant's home address on May 8, 2022.

83. Defendant persists in refusing to respond to Plaintiff's valid queries on the performance of his investment.

84. Plaintiff has given Defendant due time to respond and is forced to file this action.

85. Plaintiff has received no information from Defendant about the performance of his investment since October 2019.

86. As of this filing, Plaintiff has not received any requested information from the Defendant regarding the "development of product, website, database, go to market strategy and all business development activities," since October 2019 regarding her urgent request that Plaintiff pay for Rhino Reps tax filings.

87. Indeed, a cursory Google search reveals no website or web presence for Rhino Reps in the State of Indiana.

88. Furthermore, the State of Indiana has no records of any S-corporation that has ever been registered under the name Rhino Reps in the State of Indiana.

89. Thus, when Defendant presented Plaintiff with the opportunity to invest in Rhino Reps, no such Corporation actually existed despite Defendant's affirmations to the contrary.

90. To this date, Plaintiff has received no tangible documentation, including but not limited to income statements, profit reports, accounting statements, or any documents concerning any information regarding Rhino Reps its prospective business, its current business, its operations, or its finances.

91. Plaintiff has suffered damage in the amount of a lost $79,000 investment and the additional lost value of that money compounded across the past five years.

92. Defendant is now non-responsive and remains in possession of Plaintiff's investment.

## COUNT ONE
## AS AND FOR A FIRST CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

93. The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 above in this First Count as though fully set forth herein.

94. By forming a silent partnership with Plaintiff, Defendant assumed the burden of a fiduciary to Plaintiff.

95. A fiduciary is an agent, trustee, partner, corporate officer or director, or other representative owing a fiduciary duty with respect to an instrument.

96. Plaintiff, as her silent partner and the recipient of her fiduciary obligation is the represented person at interest.

97. Due notice has been made to Defendant by virtue of Plaintiff's repeated requests for an accounting or any updates regarding the performance of his investment.

98. In discharging her fiduciary duties, the Defendant must protect Plaintiff's interests.

99. By ignoring Plaintiff's multiple inquiries and refusing to provide any information as to the "development of product, website, database, go to market strategy and all business development activities," Defendant is willfully failing her fiduciary duty to Plaintiff.

100. Defendant further represented to Plaintiff that his initial investment of $60,000 was to be put towards the purposes of running and operating Rhino Reps.

101. However, in October 2018, Defendant required supplemental funding in order to pay for tax filings.

102. Defendant and Plaintiff signed a second written agreement, the October 2018 Agreement, which increased Plaintiff's total investment to $75,000.

103. Defendant further provided Plaintiff with $4,000 to pay for health insurance costs.

104. Defendant's willful breach of her fiduciary obligation to Plaintiff has resulted in damage to the Plaintiff totaling $79,000.

105. WHEREFORE, the Plaintiff seeks a judgment from this Court for recovery of compensatory and punitive damages in excess of $79,000.00 against Defendant Mary Ellen Jensen arising from Defendant's breach of her fiduciary duty to Plaintiff, and grant such other relief, including appropriate attorneys' fees and costs, as this Court deems proper and just.

## COUNT TWO

## AS AND FOR A SECOND CAUSE OF ACTION

## ACTUAL FRAUD

106. The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 above in this Second Count as though fully set forth herein.

107. Defendant represented herself to Plaintiff as a professional engaged in media and marketing services and provided Plaintiff with numerous documents, including prospectuses and business plans, that promoted her as having knowledge, expertise, and experience in her field.

108. Defendant further represented to Plaintiff that his initial investment of $60,000 was to be put towards the purposes of running and operating Rhino Reps.

109. However, in October 2018, Defendant required supplemental funding in order to pay for tax filings.

110. Defendant and Plaintiff signed a second written agreement, the October 2018 Agreement, which increased Plaintiff's total investment to $75,000.

111. Defendant further provided Plaintiff with $4,000 to pay for health insurance costs.

112. Plaintiff has provided Defendant with a total of $79,000 for the operation of

Rhino Reps.

113. Indeed, Defendant represented to Plaintiff that she was managing and operating a business known as Rhino Reps.

114. Instead of updating Plaintiff regarding the business and its ongoings, Defendant maintained complete silence.

115. To date Plaintiff has received no updates, investment reports, profit reports, or returns from the partnership.

116. Indeed, Plaintiff's funds seem to have been expended willfully and wantonly by Defendant with no regard to the business.

117. Furthermore, there appears to be no record of an Indiana S-Corporation being created in the name of Rhino Reps.

118. Indeed, by Defendant's own admission, Rhino Reps did not have a working website nearly two years into the partnership, even though it was a web-based venture.

119. Today, no business called Rhino Reps seems to exist.

120. Furthermore, Defendant has steadfastly avoided all contact with Plaintiff.

121. At all times, as Plaintiff's silent partner, Defendant has had a duty to speak to Plaintiff regarding his investment, and with her silence, Defendant is violating that duty.

122. Clearly, Defendant willfully misrepresented her intentions and actions in entering into the silent partnership with Plaintiff.

123. Plaintiff relied on these misrepresentations and entered into a business relationship with Defendant.

124. As a result, Plaintiff has been damaged in the amount of $79,000.

125. WHEREFORE, the Plaintiff seeks a judgment from this Court for recovery of

compensatory and punitive damages in excess of $79,000.00 against Defendant Mary Ellen Jensen arising from Defendant's actual fraud committed on Plaintiff, and grant such other relief, including appropriate attorneys' fees and costs, as this Court deems proper and just.

## COUNT THREE

## AS AND FOR A THIRD CAUSE OF ACTION

## CONSTRUCTIVE FRAUD

126.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 above in this Third Count as though fully set forth herein.

127.    Defendant represented herself to Plaintiff as a professional engaged in media and marketing services and provided Plaintiff with numerous documents, including prospectuses and business plans, that promoted her as having knowledge, expertise, and experience in her field.

128.    Defendant further represented to Plaintiff that his initial investment of $60,000 was to be put towards the purposes of running and operating Rhino Reps.

129.    However, in October 2018, Defendant required supplemental funding in order to pay for tax filings.

130.    Defendant and Plaintiff signed a second written agreement, the October 2018 Agreement, which increased Plaintiff's total investment to $75,000.

131.    Defendant further provided Plaintiff with $4,000 to pay for health insurance costs.

132.    Defendant represented to Plaintiff that she was managing and operating a business known as Rhino Reps.

133.    Instead of updating Plaintiff regarding the business and its ongoings, Defendant maintained complete silence.

134. To date Plaintiff has received no updates, investment reports, profit reports, or returns from his partnership.

135. Indeed, Plaintiff's funds seem to have been expended willfully and wantonly by Defendant with no regard to the business.

136. Plaintiff relied on Defendant's representations of her worthiness as a business partner and knowledge of her field in deciding to enter this agreement.

137. Plaintiff further relied on Defendant that Defendant would uphold her representations that she would actually perform the work necessary to operate and manage a business.

138. However, today, no business seems to exist.

139. Furthermore, Defendant has steadfastly avoided all contact with Plaintiff.

140. At all times as Plaintiff's silent partner, Defendant has had a duty to speak to Plaintiff regarding his investment, and with her silence, Defendant is violating that duty.

141. Regardless, Defendant made deceptive material misrepresentations of past or existing facts and remained continually silent when the duty to speak existed.

142. Plaintiff relied on these misrepresentations and entered into a business relationship with Defendant in which Defendant gained an advantage at Plaintiff's expense.

143. Plaintiff has been damaged by Defendant in the amount of $79,000.

144. WHEREFORE, the Plaintiff seeks a judgment from this Court for recovery of compensatory and punitive damages in excess of $79,000.00 against Defendant Mary Ellen Jensen arising from Defendant's constructive fraud committed on Plaintiff, and grant such other relief, including appropriate attorneys' fees and costs, as this Court deems proper and just.

## COUNT FOUR

## AS AND FOR A FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT

145. The Plaintiff hereby incorporates by reference Paragraphs 1 through 92 above in this Fourth Count as though fully set forth herein.

146. Defendant represented herself to Plaintiff as a professional engaged in media and marketing services and provided Plaintiff with numerous documents, including prospectuses and business plans, that promoted her as having knowledge, expertise, and experience in her field.

147. Defendant further represented to Plaintiff that his initial investment of $60,000 was to be put towards the purposes of running and operating Rhino Reps.

148. Indeed, Defendant and Plaintiff signed a written agreement memorializing the terms of their partnership, and that Plaintiff would provide Defendant and Rhino Reps with $60,000 in capital.

149. Defendant and Plaintiff signed a second written agreement, the October 2018 Agreement, which increased Plaintiff's total investment to $75,000.

150. Defendant further provided Plaintiff with $4,000 to pay for health insurance costs.

151. In that October 2018 Agreement, Defendant undertook numerous promises and obligations to Plaintiff, including ensuring the "development of product, website, database, go to market strategy and all business development activities."

152. Rather than comply with the terms of the October 2018 Agreement, Plaintiff has engaged in consistent inaction and failed to perform any of her obligations under the October 2018 Agreement.

153. To date Plaintiff has received no updates, investment reports, profit reports, or returns from his partnership.

154. Indeed, Plaintiff's funds seem to have been expended willfully and wantonly by Defendant with no regard to the business.

155. Plaintiff relied on Defendant's representations of her worthiness as a business partner and knowledge of her field in deciding to enter this agreement.

156. Plaintiff further relied on Defendant that Defendant would uphold her representations that she would actually perform under the contract that she signed.

157. However, today, no business seems to exist.

158. Furthermore, Defendant has steadfastly avoided all contact with Plaintiff.

159. At all times as Plaintiff's silent partner, Defendant foregone her contractual obligations and failed to perform any of her obligations set forth under the October 2018 Agreement.

160. As a result of Defendant's willful and wanton conduct, the October 2018 Agreement and the original investment agreement have been completely and irretrievably breached.

161. Plaintiff has been damaged by this breach in the amount of $79,000.

162. WHEREFORE, the Plaintiff seeks a judgment from this Court for recovery of compensatory and punitive damages in excess of $79,000.00 against Defendant Mary Ellen Jensen arising from Defendant's actual fraud committed on Plaintiff, and grant such other relief, including appropriate attorneys' fees and costs, as this Court deems proper and just.

## ATTORNEYS' FEES AND COSTS

163. Plaintiff incorporates paragraphs 1–82 as if fully restated here.

164. As a result of Defendants' wrongful acts and omissions, Plaintiff has incurred and continues to incur liabilities in the form of expenses, costs, and attorneys' fees.

165. Plaintiff thereby seeks recovery of its expenses, costs, attorneys' fees, and any other legal fees in an amount yet to be determined.

## GENERAL

166. Where conditions precedent are alleged, the Plaintiff avers that all conditions precedent have been performed or occurred.

167. Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, based on the foregoing, PLAINTIFF DANIAL CORBIN accordingly and respectfully demands judgment against the DEFENDANT MARY ELLEN JENSEN as follows:

a. That this Court specifically grant him damages in an amount of $79,000 or an amount to be determined at trial;

b. That the Plaintiff be awarded his attorneys' fees and costs; and

c. That this Court grant the Plaintiff any such other and further relief to which he may be entitled as a matter of law and as deemed appropriate by this Court.

Dated: Chicago, Illinois  
January 16, 2023

Respectfully Submitted,  
PLAINTIFF  
DANIAL CORBIN

/s/ Charles Lee Mudd, Jr.

By: One of His Attorneys
Charles Lee Mudd Jr.
MUDD LAW
411 S. Sangamon Street
Suite 1B
Chicago, Illinois 60607
312.964.5051 Telephone
312.803.1667 Facsimile
clm@muddlaw.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DANIAL CORBIN, | ) |
| Plaintiff, | ) Case No.: |
| | ) |
| v. | ) Hon. |
| | ) |
| MARY ELLEN JENSEN | ) Magistrate Hon. |
| | ) |
| Defendant. | ) |

**JURY DEMAND**

The Plaintiff demands a trial by jury.

/s/ Charles Lee Mudd Jr.
Charles Lee Mudd Jr.