UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DANIAL CORBIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23-cv-18-AZ |
| | ) |
| MARY ELLEN JENSEN, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

They say that friends and money do not mix. This case aptly demonstrates that maxim. Plaintiff Danial Corbin says he lent his social acquaintance Defendant Mary Ellen Jensen $79,000 cash (in stacks of hundred-dollar bills) as an investment in a company that she was trying to get off the ground. Defendant Jensen, who is proceeding *pro se* and without counsel, denies Plaintiff Corbin ever gave her any such investment. Jensen admits she tried to start a company and solicited an investment from Plaintiff Corbin, but insists Corbin would only invest after the company was already operational. Both parties agree the company never conducted any business, and Jensen says she never received any investment from Corbin. Now, with discovery in the case concluded, Jensen has filed a motion for summary judgment, claiming that Corbin failed to support his allegations with evidence sufficient to warrant a trial. While this might at first blush appear to be an obvious instance of where a factfinder must decide the truth, after a review of the evidence submitted, the Court agrees with Jensen that Corbin has failed to bring forth sufficient admissible

evidence to support his central allegations. In such a situation, summary judgment in favor of the Defendant Jensen is mandated.

## Background

Starting in 2016, Mary Ellen Jensen took steps to create a new company called "Rhino Reps." Rhino Reps was to be a "content licensing platform" that would collect and license stock photography and other visuals for small businesses. DE 110-1 (M. Jensen Dep. Tr.) at 11:24-12:21. Jensen had previously worked for Getty Images and in the industry generally for years. *See generally id.* at 12:22-16:14. After she had identified a market need and decided to try to start the business, Jensen began working with a web developer named Adam Talesky to build a photography database and website for Rhino Reps. *Id.* at 19:4-20:18. However, Talesky did not live up to his end of the bargain and was never able to produce a working website, despite numerous extensions and promises. *Id.* at 27:21-28:3 (testifying that "Mr. Talesky kept promising dates of launch … And he kept pushing it out and saying he was almost finished and then say, just hang on, just hang on … And at the end, never came through with anything."). Jensen testified that Talesky was ultimately not able to produce an operational website as he had promised but eventually "loaned" Jensen money because of his inability to deliver. *Id.* at 21:15-25 (testifying that after Talesky "failed to produce the website and kept promising that it would be done," Talesky lent Plaintiff approximately $12,000-18,000); *id.* at 22:1-9 ("Q. Okay. Were you having financial difficulties with paying your mortgage at that time? A. Yes. Q. Did you use

2

any of the funds from Mr. Talesky to pay your mortgage? A. That's what the loan was for, it was to keep me afloat with the promise that he would complete the website and have me up and running for business, which did not happen.").

While Jensen testified that she did not receive any investments from outside sources for Rhino Reps beyond the loan from Talesky, she testified that she solicited and obtained "promises for investment" in her company to be paid after it was up and running. *Id.* at 20:19-25 ("Q. Did you obtain any investment funds for Rhino Reps and Jensen Stock? A. No. Q. Did you obtain any promises for investment in Rhino Reps and Jensen Stock? A. Yes. Once the website would have launched and proof of concept that it was working."). She says those promises to invest were predicated on Rhino Reps having an operational website. *Id.* at 21:8-12 ("Q. So you're saying that there was no intent to invest unless there was an operational website; is that correct? A. Correct. If it wasn't working then there was nothing to move forward with.").

One of those investors was Danial Corbin. Specifically, in June 2017, Corbin and Jensen signed an "Investor Agreement" for Rhino Reps. DE 34 (Def.'s Resp to Pl.'s First RFAs) at No. 5. A copy of the Investor Agreement was not included in either party's summary judgment briefs. Under the terms of the agreement, Corbin was to invest money in the company and be a silent partner while Jensen would run the company. *Id.* at Nos. 4 and 8. Prior to signing the Investor Agreement with Corbin, Jensen provided him with a cash flow analysis, market development plan, and business prospectus. *Id.* at No. 3. In exchange for his investment, Corbin would

3

receive a 13% share in the net profits of Rhino Reps. *Id.* at No. 9. In October 2018, Corbin and Jensen signed another document, titled a "Partnership Agreement" DE 34 (Def.'s Resp to Pl.'s First RFAs) at No. 11. Under the terms of the Partnership Agreement, Corbin was to receive a 16.25% share in the net profits of Rhino Reps. *Id.* at No. 14. Neither party submitted a copy of the Partnership Agreement their summary judgment briefs.

In his Amended Complaint, Corbin alleges that pursuant to the June 2017 Investor Agreement he gave Jensen $60,000 in cash at his home in the form of six $10,000 stacks of 100-dollar bills. DE 100 (Am. Compl.) ¶¶ 38-41. He further alleges that under the October 2018 Partnership Agreement, he gave Jensen and additional $15,000 in cash, once again at his home and in the form of stacks of 100-dollar-bills. *Id.* ¶¶ 47-55. That same month, Corbin says he gave Jensen a final $4,000 in cash so that she could purchase health insurance while getting the company up and running. *Id.* at ¶¶ 57-59.

At her deposition, Jensen testified unequivocally that she did not receive any money from Corbin under the terms of either the Investor Agreement or Partnership Agreement. DE 110-1 (M. Jensen Dep. Tr.) at 22:10-11 ("Q. Did you ever accept any funds from Mr. Corbin? A. No."). In October 2019, Jensen informed Corbin that the Rhino Reps website was not fit for operational purposes, and no company named Rhino Reps was ever registered, incorporated or in existence as a legal entity. DE 34 (Def.'s Resp to Pl.'s First RFAs) at Nos. 17, 24-26.

4

Corbin asserts five counts against Jensen: (1) breach of fiduciary duty; (2) actual fraud; (3) constructive fraud; (4) breach of contract; and (5) civil conversion. DE 100 (Am. Compl.) at ¶¶ 85-157.

## Discussion

In the typical summary judgment posture, the moving party bears the initial burden of demonstrating a lack of genuine issue of material fact by pointing to the undisputed evidence. Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). But the Supreme Court has also explicitly endorsed the idea of a "no evidence" summary judgment motion, that is one by which the moving party does not cite evidence themselves but instead tells the Court that the nonmoving party's claims (or affirmative defenses) have no evidentiary basis. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court framed it, "[i]n our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*; *see also In re NCW Props., LLC*, 2023 WL 2624844, at *6–7 (Bankr. N.D. Ill. Mar. 24, 2023) (discussing the history and development of the "no evidence" summary

judgment motion). That is how Jensen frames her motion for summary judgment. *See* DE 105 at 3 ("Plaintiff has been unable to unwilling to provide credible or verifiable evidence to meet the burden of proof for these specious claims."). And while the Court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party," *Bellaver v. Quanex Corp.* 200 F. 3d 485, 491-92 (7th Cir. 2000), genuine issues of material fact exist only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana*, 259 F.3d 619 (7th Cir. 2001). In other words, Corbin as the nonmoving party must produce "more than a scintilla of evidence to support his position." *Id*. As such, the analysis in this opinion will focus on what evidence Corbin has cited and presented to defeat Jensen's motion and establish that there are issues which must be resolved by a factfinder.

As detailed above, this case comes down in large part to a "he said, she said" between the parties about whether Corbin gave Jensen $79,000 and if so, what Jensen did with that money. While normally "summary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute," *Russell v. Bd. of Trs. of Univ. of Illinois at Chicago*, 243 F.3d 336, 340 (7th Cir. 2001), it is equally true that "[s]ummary judgment is the proverbial 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (citation omitted). That means mere *allegations* are insufficient to impose

6

the burden of a trial, and the party opposing summary judgment must bright forth *evidence* demonstrating the need for a trial to resolve a factual dispute. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)). After reviewing the record of admissible evidence submitted by Plaintiff Corbin, the Court is not convinced he has put forth sufficient evidence to require a trial.

Plaintiff has brought five claims: (1) breach of fiduciary duty; (2) actual fraud; (3) constructive fraud; (4) breach of contract; and (5) civil conversion. Typically, in the summary judgment posture, the Court would recount the elements of each claim upon which the party is seeking summary judgment and analyze the claims one by one. Here, that is not entirely necessary as central to all five of Corbin's claims is his allegation that he gave Jensen a total of $79,000 at his home in the form of stacks of one-hundred-dollar bills. Has Cobin provided *any admissible evidence* that he gave Jensen $79,000? Somewhat shockingly, the answer to that is "No."

"To be considered on summary judgment, evidence must be admissible at trial, …. If the evidence is inadmissible hearsay, the courts may not consider it. And when a document contains multiple layers of hearsay, … each layer must be admissible." *Prude v. Meli*, 76 F.4th 648, 661 (7th Cir. 2023) (citation omitted). That said, "the

7

form produced at summary judgment need not be admissible" and the Court may consider statements made in sworn declarations and affidavits at summary judgment rather than strictly relying on depositions or prior trial testimony. *Cairel v. Alderden*, 821 F.3d 823, 830–31 (7th Cir. 2016) (quoting *Wragg v. Village of Thornton,* 604 F.3d 464, 466 (7th Cir. 2010)).

Curiously, Corbin did not attach a declaration or affidavit from himself in connection with his opposition to summary judgment. Nor were copies of either the June 2017 Investor Agreement or October 2018 Partnership Agreement included or cited in his opposition brief or statement of genuine material facts in dispute; so the Court cannot consider them to establish a binding contract. Instead, he primarily relies on (1) the allegations of his Amended Complaint (which also did not include any attachments), (2) generalized statements from his counsel about what Corbin "will" testify to at trial, and (3) sworn statements from Corbin's family and neighbors about what he told them about giving Jensen money. He further attaches Jensen's deposition testimony, her responses to written discovery, and an email exchange between Corbin's counsel and a woman named Norma Mitchell in which Mitchell said she did not purchase jewelry, paints or anything else from Jensen. *See* DE 110-2. The Court will address all this evidence in sequence to determine whether there are genuine issues of material fact that must be resolved at trial.

First, as to the Amended Complaint, "[i]t is well-established … that pleadings are not evidence unless they are verified and that district courts may only consider

8

admissible evidence when determining summary judgment motions." *Warner Bros. Ent. v. Synergex Corp.*, 2014 WL 518085, at *3 (N.D. Ill. Feb. 10, 2014) (citing *Devbrow v. Gallegos,* 735 F.3d 584, 587 (7th Cir. 2013) ("[a] verified complaint is the equivalent of an affidavit for summary judgment purposes")). Verified pleadings are those that are "signed by the individual Plaintiff himself." *McCullough v. CitiMortgage, Inc.,* 2019 WL 4695522, at *3 (N.D. Ind. Sept. 26, 2019). Here, Corbin did not personally sign or verify his original or amended complaint. His lawyers affixed an electronic signature to them, *see* DE 1 and 100, which is entirely permissible for purposes of filing, but not for purposes of deciding summary judgment. Thus, Corbin cannot at this stage of litigation rely on the allegations of his pleadings to create a genuine issue of material fact, as they are not evidence that can defeat Jensen's "no evidence" motion for summary judgment.

Second, and similarly, statements by Corbin's lawyer that he "will" testify consistent with his pleadings and forecasts about what Corbin "will" say at trial are categorically not evidence. They are speculation and argument that may be true, but are not supported with admissible documentary or testimonial evidence. "In responding to a summary judgment motion, it is not enough for plaintiff's counsel to promise that plaintiff 'will testify to'" some particular fact or about some particular issue. *Barra v. Home Depot U.S.A., Inc.*, 2020 WL 5979502, at *3 (N.D. Ill. Oct. 8, 2020) (granting summary judgment for moving party where "[i]nstead of pointing to evidence" nonmoving party only "promised future testimony"). Put differently, "[w]e

9

are no longer at the pleading stage; the time for making merely plausible allegations is long past." *Id.*

Recently, the Seventh Circuit confirmed how in opposing summary judgment, it is not enough for the non-moving party to respond and dispute the moving party's statement of material facts; record evidence must be cited. *Li v. Fresenius Kabi USA, LLC*, 110 F.4th 988, 995 (7th Cir. 2024), *cert. denied*, 145 S. Ct. 1331, 221 L. Ed. 2d 416 (2025) ("Li insists that she has raised a material dispute of fact, arguing that her response to Fresenius's Rule 56.1 statement contradicts Fresenius's evidence regarding whether bench work was an essential job function. But a response to a Rule 56.1 statement is not, on its own, admissible evidence, and Li cites no additional evidence."). Nor is it the Court's job to search out other evidence in the record which might support otherwise unsupported allegations and statements. *Id.* at 996 ("It is not our job—nor that of the district court—to 'scour the record in search of a genuine issue of triable fact.'") (quoting *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 285 (7th Cir. 1997).

While Jensen did not provide a separate statement of material fact in support of her "no evidence" motion for summary judgment, she is proceeding pro se and without a lawyer, so the Court did not require her to do so. After she filed her motion and the parties consented to my jurisdiction, *see* DE 103 and 107, the Court held a hearing with the parties. At that hearing, I explained that given Jensen's pro se status, I would not hold her strictly to the requirements of Local Rule 56-1 which,

*inter alia*, requires that all parties moving for summary judgment file: a separate "Statement of Material Facts with numbered paragraphs for each material fact the moving party contends is undisputed which includes: (A) a short statement of each fact; and (B) a citation to evidence supporting each fact." N.D. Ind. L.R. 56-1(a). This relaxation of the local rules made sense given that the basis for Jensen's motion was a lack of evidence. I explained that Corbin should focus instead on identify the core areas of dispute and that I was fine with a more practical rather than formulaic approach. But at the same time, I made clear that I could not disregard the standards of Federal Rule of Civil Procedure 56 or substantively relax the standards of summary judgment. I told Plaintiff that he did not need to cite *all* of his evidence, as that could be left for trial, but instead to focus on identifying the areas of dispute with a focus on substance over form. Evidence, rather than allegations, conjecture or argument, is the substantive core of deciding summary judgment.

So then what remains of Plaintiff Corbin's evidence? As mentioned, he included Jensen's deposition transcript and her responses to written discovery. But beyond providing background and establishing that there was some agreement between the parties about investing in Rhino Reps at some point in time, they support Jensen's version of events, not Corbin's. His statement of disputed material fact cites to four declarations previously filed with the Court. Those declarations come from Corbin's aunt, uncle, and two of his neighbors. Tellingly, none are authored or sworn to by Corbin himself. Finally, he further includes an email exchange between Plaintiff's

11

counsel and someone named Norma Mitchell who says she did not purchase anything from Jensen, which cuts against some of Jensen's testimony explaining the source of some cash deposits to her bank accounts. *See* DE 110-2.

An affidavit or declaration offered in opposition to summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e). "It must be grounded in first-hand observation and experience, not based upon speculation, rumor, or intuition that is remote from such experience." *Pryor v. City of Chicago*, 726 F. Supp. 2d 939, 943 (N.D. Ill. 2010) (citing *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir.1991) (en banc)).

Here, Corbin offers four declarations from family members and neighbors that contain substantially identical statements that at some unspecified date years ago, he told each of them that he had given Jensen tens of thousands of dollars. The relevant portions of the sworn statements are:

- "A few years ago, before Plaintiff hired counsel, Plaintiff confided in me and my husband, Mike Friedland, that he had given approximately $75,000 in cash to Ms. Jensen to start a business with her." DE 72 (Decl. of Pl.'s Aunt K. Friedland) at ¶ 3.
- "A few years ago, before Plaintiff hired counsel, Plaintiff confided in me and my wife, Kerry Friedland, that he had given approximately $75,000 in cash to Ms. Jensen to start a business with her." DE 73 (Decl. of Pl.'s Uncle M. Friedland) at ¶ 3.
- "A few years ago, before the filing of this lawsuit, the Plaintiff confided in me that he had given Ms. Jensen approximately $80,000 in cash to

- start a business with her." DE 74 (Decl. of Pl.'s Neighbor A. Perovich) at ¶ 5.
- "A few years ago, before the filing of this lawsuit, Plaintiff confided in me and my husband that he had given approximately $80,000 in cash to Ms. Jensen to start a business with her." DE 75 (Decl. of Pl.'s Neighbor M. Perovich) at ¶ 5.

Corbin asserts that each of these declarations "corroborate" what he says he *will* testify to at a future trial. *See* DE 111 at ¶ 5 ("Plaintiff's testimony will show that he did entrust Defendant with $79,000 and this will be corroborated by testimony of Kerry Friedland, Michael Friedland, Anthony Perovich, and Maureen Perovich."). But as discussed above, we can set aside statements from his lawyers as to what Jensen "will" testify to because such statements are of no evidentiary value at the summary judgment stage. *Barra*, 2020 WL 5979502, at *3. Plaintiff could have sat for a deposition noticed by his own attorney or even more easily produced an affidavit or declaration during discovery or drafted one specifically in opposition to Defendant's motion for summary judgment. He and his counsel chose not to do any of those things that would have provided sworn testimony or evidence that he actually gave Jensen any money. Nor did he even attach the relevant documents that he says obligated him to give Jensen money in exchange for a share of Rhino Reps profits.[1] Those decisions and failures to produce evidence have consequences.

---

[1] As laid out in the background section, Jensen admitted that she and Corbin signed two agreements relating to Rhino Reps, but she denied that Corbin was obligated under either document to provide her with money until the company was up and running. Corbin has not presented evidence, such as copies of the contracts, to contradict her testimony.

Thus, the Court must assess the statements provided by these other witnesses on their own and without reference to any corroborative value. Each of these declarants repeat what they say that Corbin "confided" in them years ago before this lawsuit was filed, ostensibly to show that Jensen did in fact lend Corbin money. That is textbook hearsay. "Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Breland*, 356 F.3d 787, 792 (7th Cir. 2004) (quoting *United States v. Linwood*, 142 F.3d 418, 424-25 (7th Cir. 1998); *Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) ("Hearsay is a statement the declarant does not make while testifying at the current trial or hearing a party offers in evidence to prove the truth of the matter asserted in the statement."). "Whether a statement is hearsay and, in turn, inadmissible, will most often hinge on the purpose for which it is offered." *Breland*, 356 F.3d at 792. "If ... an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply." *Id.* (alterations in original).

Here, Corbin is offering these witnesses statements about what he confided in them years ago to prove the underlying truth of the matter asserted, that is that Corbin did in fact give Jensen $79,000. What is missing from all of this is any admissible statement (*i.e.*, made under penalty of perjury) from Corbin himself that he ever gave Jensen $79,000 cash or even a single red cent, or any document which may have obligated him to do so. Hearsay is as inadmissible at summary judgment

14

as it is at trial. *Prude*, 76 F.4th at 661.

The email exchange between Plaintiff's counsel and Normal Mitchell is even more hearsay. For argument's sake, the Court can assume Mitchell is real and this email is genuine, but it is yet another unsworn and unverified out-of-court statement that is not admissible at summary judgment to establish a genuine issue of material facts.

Finally, while the Court considered holding a hearing on this matter to question why no declaration or affidavit from Plaintiff was included or why Plaintiff failed to attach the relevant contracts that he is seeking to enforce, but that would be an invitation to re-open the record at summary judgment and advocate on behalf of Plaintiff. That, in the Court's view, would be inappropriate. *Li*, 110 F.4th at 995.

## Conclusion

For the reasons discussed, Defendant Mary Ellen Jensen's No Evidence Motion for Summary Judgment [DE 105] is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and close this case.

SO ORDERED this 29th day of October 2025.

> /s/ *Abizer Zanzi*
> MAGISTRATE JUDGE ABIZER ZANZI
> UNITED STATES DISTRICT COURT

cc: Defendant Mary Ellen Jensen (pro se) by US Mail